UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 19 CR 730 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| RENATO DUARTE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

A federal grand jury indicted Renato Duarte with six counts of healthcare fraud, in violation of 18 U.S.C. § 1347. On October 21, 2022, following a five-day trial, a jury returned its verdict finding Duarte guilty on Counts Two through Five and not guilty on Counts One and Six. Duarte now moves for a judgment of acquittal or, alternatively, a new trial. In his motion for a judgment of acquittal, he challenges the sufficiency of the evidence, arguing that the government failed to prove that Duarte acted "knowingly and willfully," as required under 18 U.S.C. § 1347. Because the jury had sufficient evidence to find beyond a reasonable doubt that Duarte acted intentionally, the Court denies Duarte's motion for a judgment of acquittal. In support of his motion for a new trial, Duarte further argues that the Court erred by allowing the government to present evidence that Duarte (1) intentionally billed for deceased patients and (2) billed for patients who were in the hospital as opposed to a nursing home on the day Duarte claimed to have seen them. The Court finds that it properly admitted this evidence because the government offered the evidence to prove the existence of a scheme to defraud. *See* Doc. 1 ¶¶ 5(a), (b). The Court, therefore, denies Duarte's motion for a new trial.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 29 allows a defendant to challenge the evidence after the close of the government's case, or after the close of all evidence, as "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017). The Court will only overturn the jury's verdict if "after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (citation omitted). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a 'heavy' burden that is 'nearly insurmountable.'" *Kohli*, 847 F.3d at 489 (citation omitted).

Federal Rule of Criminal Procedure 33 allows "a district court to grant a timely request for a new trial 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). The Court should only grant a new trial if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand," *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (alteration in original) (citation omitted), or "if there is a reasonable possibility that [a] trial error had a prejudicial effect on the jury's verdict," *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019). "The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (citation omitted).

**ANALYSIS**

I.  **Motion for a Judgment of Acquittal**

To convict Duarte under 18 U.S.C. § 1347, the government had to prove beyond a reasonable doubt that: (1) there was a scheme to defraud Medicare; (2) Duarte knowingly and

willfully carried out the scheme; (3) Duarte acted with the intent to defraud Medicare; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and (5) the scheme was in connection with the delivery of or payment for health care benefits or health care services. 18 U.S.C. § 1347; *United States v. Banks*, 405 F.3d 559, 569 (7th Cir. 2005); 7th Cir. Pattern Criminal Jury Instructions, 18 U.S.C. § 1347(a)(1) Health Care Fraud—Elements.

    The jury found Duarte guilty of Counts Two through Five, which were all instances where Duarte billed Medicare for psychotherapy services rendered in Chicago on dates when he was out of the country. Duarte argues that the government failed to present sufficient evidence to sustain convictions on these counts. He argues that the government failed to prove that he acted knowingly and willfully, and that the evidence instead showed that Duarte was a workaholic who simply made billing mistakes. Because the jury had sufficient evidence to find beyond a reasonable doubt that Duarte acted intentionally, the Court denies Duarte's motion for a judgment of acquittal.

    Duarte first argues that the evidence showed that his mistakes were the result of negligence due to his "hectic work schedule and imperfect record keeping system." Doc. 111 at 4. To support this claim, Duarte points to three pieces of evidence presented at trial: (1) Homeland Security Special Agent James O'Leary testified that after being notified of billing irregularities by a letter in the mail, Duarte called the number in the letter for assistance; (2) Duarte employed Steven Neely, an experienced Medicare biller, to handle his billing; and (3) text messages between Duarte and Neely showed Duarte instructing Neely to make any bills with potential errors pro bono. He argues that a person intending to defraud Medicare would not take these actions.

Notwithstanding these facts, the Court finds that the record contained sufficient evidence from which a reasonable juror could find that Duarte acted intentionally. The government introduced travel receipts and bank statements showing that Duarte was in Seattle and then Canada over a two-week period in May 2017. But the handwritten billing sheets, which Duarte provided to Neely less than a week after returning from Canada, claimed that Duarte saw patients in Chicago throughout the two-week period that he was in Canada. The jury viewed recordings of agents interviewing Duarte about the billing inconsistencies. During these interviews, Duarte initially claimed to have been in Chicago working on his mother's apartment but later admitted that he was in Canada on the relevant dates and knew that the billings sheets were inaccurate. The jury also saw text messages between Duarte and Neely that Duarte sent after learning that he was being investigated. Just as he initially told the investigating agents, Duarte also told Neely that he was working on his mother's Chicago home in May 2017, during the same time he was in Canada. The text messages also showed Duarte asking Neely to tell the investigating agents that Neely had disposed of the billing sheets, but at trial Neely testified that he had, in fact, provided those sheets to the government.

Although Duarte argues that this evidence does not establish that he intended to defraud Medicare, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *United States v. Gonzalez*, 737 F.3d 1163, 1168 (7th Cir. 2013) (citation omitted); *see also United States v. Pope*, 739 F.2d 289, 291 (7th Cir. 1984) (the jury has the "exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw inferences from the evidence presented."). While perhaps a rational juror could have believed Duarte's explanation and found that his billing mistakes were the result of negligence stemming from his hectic work schedule and poor record keeping, viewing the

evidence in the light most favorable to the government, the jury also certainly had a sufficient basis to conclude that Duarte intentionally submitted fraudulent bills to Medicare. *See United States v. Presbitero*, 569 F.3d 691, 700 (7th Cir. 2009) ("Alternative explanations are generally not enough to win a challenge to the sufficiency of the evidence."); *see also United States v. Chester*, No. 13 CR 00774, 2017 WL 3394746, at *27 (N.D. Ill. Aug. 8, 2017) ("The jury's verdict cannot be overturned for insufficient evidence just because there was a reasonable alternate theory."). This is particularly true given the recorded interview with agents in which Duarte admitted that he knew the billing sheets contained false information. Further, the jury could reasonably infer that when he dropped off the billing sheets to Neely less than a week after returning from his Canada trip that he would have known he had not provided psychotherapy services during those two weeks. Thus, the Court finds that the jury had sufficient evidence to find that Duarte acted intentionally.

Duarte also argues that because the government's theory of fraud relied on the accuracy of unreliable nursing home records that the evidence was insufficient to support a guilty verdict. Specifically, he points to testimony of a records administrator for one of the nursing homes, Janet Reyes, stating that "patient records were misplaced, misfiled and purged regularly." Doc. 111 at 5. Initially, the government points out that Reyes worked at Bridgeview Healthcare, but none of the patients referred in Counts Two through Five resided at that location, rather they lived at Citadel Estates, Windsor Estates, and Generations at Applewood. They argue, therefore, that her testimony is immaterial as to those Counts. Evidence of unreliable records at nursing homes more generally, however, could undermine the existence of a scheme to defraud or Duarte's intent, if for instance, the jury found that missing records were the result of disorganization at the nursing homes and not Duarte's intentional actions.

5

Even if the jury found the nursing home records unreliable, the government introduced other evidence from which the jury could find that a scheme to defraud existed and that Duarte acted intentionally. For instance, Dr. Awodele testified about what documentation a provider would typically need to submit claims for reimbursement to Medicare. The government also submitted evidence that Duarte did not maintain those records described by Dr. Awodele, lied about keeping records, and lied about where he kept them. Based on the evidence presented, a reasonable jury could find that the government met its burden. It is the jury's role, not the Court's, to determine what weight to give the evidence. *See Pope*, 739 F.2d at 291. The jury considered Duarte's argument that the nursing home records were unreliable and still found that the totality of the evidence supported a guilty verdict on Counts Two through Five.

For these reasons, the Court finds that the jury had sufficient evidence to convict Duarte on Counts Two through Five and thus denies Duarte's motion for a judgment of acquittal.

## II.   Motion for a New Trial

Alternatively, Duarte argues that the lack of sufficient evidence to support a guilty verdict, coupled with the introduction of certain evidence, compromised his right to a fair trial. For the reasons discussed above, the Court finds that Duarte has not established that he is entitled to a new trial based on the sufficiency of the evidence and thus only addresses Duarte's argument that the introduction of certain evidence was improper. *See United States v. Hollnagel*, 955 F. Supp. 2d 830, 868 (N.D. Ill. 2013) (rejecting motion for new trial for same reasons as judgment of acquittal); *see also United States v. Sorich*, No. 05 CR 644, 2006 WL 3347555, at *11 (N.D. Ill. Nov. 15, 2006) (same).

Duarte takes issue with the introduction of evidence that he (1) intentionally billed for deceased patients and (2) billed for patients who were in the hospital as opposed to a nursing

6

home on the day Duarte claimed to have seen them. Specifically, Duarte highlights that the evidence showed that out of 25,536 patients he billed, he only mistakenly billed for dead patients five times. Doc. 111 at 6. He points to the testimony of Dr. William McNierney, a podiatrist who testified that he had also billed for dead patients but was never criminally charged, to explain that it was reasonable to make such mistakes. Duarte also questions a spreadsheet introduced by the government at trial in support of its theory that he billed for patients that were in the hospital when he claimed to see them at a nursing home. Duarte argues that the evidence showed that he, indeed, treated these patients - just in the hospital setting rather than at the nursing home. These records, therefore, fail to demonstrate any evidence of a scheme to defraud.

Duarte argues that the introduction of this evidence denied him a fair trial because the jury did not have the ability to reject these theories of liability because the government did not charge him with any substantive counts based on billing for deceased patients or billing for patients in a nursing home setting when the patients were in the hospital. The law does not require the government to limit its evidence solely to conduct charged in the substantive counts where the government charges a scheme to defraud and the evidence at issue is direct evidence of the existence of a scheme to defraud. *See United States v. Volpentesta*, No. 14 C 50343, 2015 WL 4545215, at *10 (N.D. Ill. July 27, 2015) ("Evidence of the scheme to defraud is not limited to the particular executions of the scheme alleged in the indictment."). The Court did not err, therefore, in admitting this evidence for the jury's consideration. Further, the jury had the opportunity during its deliberations to weigh and reject the challenged evidence. The jury may have found that, as Duarte argues, this evidence was unreliable and could not support a guilty verdict. Nonetheless, the jury apparently determined that, at minimum, the remaining evidence

supported a scheme to defraud and provided evidence beyond a reasonable doubt of Duarte's guilt. Considering the totality of the evidence, the Court does not find that it would be a miscarriage of justice to allow the jury's guilty verdict to stand nor does the Court find that the jury's verdict was against the manifest weight of the evidence.

Because the government submitted sufficient evidence for a reasonable jury to find Duarte guilty and because the Court finds no error in admitting direct evidence of a scheme to defraud, the Court denies Duarte's motion for a new trial.

## CONCLUSION

For the foregoing reasons, the Court denies Duarte's motion for a judgment of acquittal, or alternatively, a new trial [111].

Dated: May 10, 2023

SARA L. ELLIS
United States District Judge